*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

MEKIO PRICE,

        Defendant-Appellee.

UNPUBLISHED
May 18, 2026
2:35 PM

No. 374150
Wayne Circuit Court
LC No. 24-002431-01-FH

Before: WALLACE, P.J., and GARRETT and ACKERMAN, JJ.

PER CURIAM.

The prosecution appeals as of right from the trial court's sua sponte dismissal without prejudice of a three-count felony prosecution of Defendant Mekio Price for carrying a concealed weapon, MCL 750.227(2); possessing a device designed or intended to be used to convert a semiautomatic firearm into a fully automatic firearm, MCL 750.224e; and possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b(2). The trial court entered its dismissal on the day set for trial, but before the jury had been empaneled and sworn in, after the prosecution disclosed that the Michigan Commission on Law Enforcement Standards (MCOLES) license of the key witness in the case, Officer Fragoso, was rendered inactive before the time of his observations and actions in investigating the case to support the charges. The trial court concluded that in such a circumstance "the officer had no authority to act as a police officer" where, pursuant to the MCOLES Act, MCL 28.601 *et seq.*, the officer "shall not exercise the law enforcement authority described in the laws of this state under which the individual is employed if . . . (c) The individual's license is rendered inactive." MCL 28.609(14).

We find that the trial court's dismissal without prejudice violates the constitutional separation of powers and was an abuse of discretion. The dismissal interfered with the prosecution's authority to bring and pursue criminal charges, where there was no abuse of discretion or evidentiary insufficiency by the magistrate in binding the case over for trial from the preliminary examination and there is no permissive statute or other law authorizing such a dismissal. We accordingly reverse and remand to allow the prosecution to reinstate the charges against defendant at its own discretion.

-1-

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 30, 2023, Officer Fragoso was driving a patrol car with Officer McGregor and Officer Scott in Detroit, Michigan, when he observed defendant talking to someone on the sidewalk. Defendant looked in the officers' direction before walking the opposite way towards a red sedan, while holding his right side. Officer Fragoso then saw defendant make a "throwing motion towards the front of the [red sedan]." He thereafter was able to hear the sound of a metallic object hitting the ground (because he was approximately five feet from the sedan with his window down). Officer Fragoso informed his partners of his observations, and they exited the vehicle to make contact with defendant.

Under the sedan, Officer Fragoso found a handgun that had fresh scratches on the side it was lying on, equipped with a conversion device that makes semiautomatic handguns fully automatic. Defendant did not respond to Officer Fragoso's question whether he had a concealed pistol license. Officer Fragoso's partners arrested defendant, and he was charged with the three felony offenses indicated.

Following a preliminary examination, in which Officer Fragoso was the sole testifying witness, defendant was bound over to the trial court on April 29, 2024. On December 11, 2024, the date set for defendant's jury trial, before the jury venire entered the courtroom or was sworn in, the prosecution made an oral motion in limine seeking to prevent defendant from mentioning Officer Fragoso's inactive MCOLES license. According to the prosecution, Officer Fragoso had previously worked for the Detroit Police Department (DPD) before leaving to work for the Lincoln Park Police Department. He then left Lincoln Park and returned to the DPD. When he returned to the DPD, Officer Fragoso's MCOLES license became inactive due to what the prosecution asserted to be an administrative lapse by the DPD's Human Resources Department. Officer Fragoso was notified of his inactive MCOLES license approximately a month-and-a-half before trial and was placed on administrative leave.

The prosecution argued that Officer Fragoso was still a licensed police officer until he was notified of his inactive MCOLES license, because he was still acting under color of law until that time. The prosecution also noted that Officer Fragoso recently testified in another courtroom, notwithstanding his inactive MCOLES license, and that there is likewise a jury instruction that is read "in every trial that the jury is to treat every police officer like every other witness. That is, would be a curative instruction in this case." See M Crim JI 5.11.

Defense counsel argued that he had inadequate time to investigate the licensing issue because he was only made aware of it the evening before. However, defense counsel argued that he was entitled to question Officer Fragoso about why he was not timely notified of his MCOLES license becoming inactive or the reason why that occurred, among other inquiries. Defense counsel seemed to concede that Officer Fragoso was competent to testify, by stating:

> [t]he concern that we have regarding Officer [Fragoso] testifying is cured by the, by the jury instruction that our prosecutor has indicated. Whether he is a police officer or not, his testimony will be judged by credibility. He can't be judged just because he is a police officer. However, he's acting as a police officer and I should be allowed to explore what that means to be a police officer.

The trial court took the issue under advisement, brought the jury venire into the courtroom, read them preliminary jury instructions, and voir dire was conducted, after which the potential jurors were excused for lunch. Going back on the record, the trial court then inquired into the extent of Officer Fragoso's role in the case, including whether he arrested defendant. The prosecution informed the trial court that Officer Fragoso's partners arrested defendant, but Officer Fragoso discovered the handgun and was the "star witness," potentially the only officer who saw defendant with the handgun and was the officer who allegedly heard defendant discard the weapon and recovered the weapon. The prosecution conceded that "most of the facts that are most important . . . would come from Officer [Fragoso]," although his partners potentially could corroborate his testimony. The prosecution then indicated at the hearing that it was unsure if Officer Fragoso's license was inactive at the time of defendant's September 30, 2023 arrest.[1]

The trial court briefly recessed before placing its ruling on the record:

> The [c]ourt has had an opportunity to review the issues concerning the motion in limine and the [c]ourt notes that there is no [c]ourt [r]ule or statute that specifically addresses a motion to dismiss criminal charges.
>
> Ordinarily, a motion to dismiss is used to address issues such as double jeopardy or entrapment, where the remedy is dismissal of the case. The [c]ourt notes that the trial court exceeds its authority when it dismisses the information against a defendant at a [p]retrial stage of the proceedings, citing [*People v Morrow*, 214 Mich App 158; 542 NW2d 324 (1995)], because the prosecutor has exclusive authority to decide whom to prosecute[.] [T]he Court is also aware that a trial court's decision on a motion to dismiss is reviewed for an abuse of discretion standard.
>
> The [c]ourt notes here that its . . . position that this is not the [p]retrial stage of the proceedings, that this is the trial stage of the proceedings, although the [c]ourt will note that the jury has yet to be sworn in, but the jury has been selected and this is the day of trial.
>
> The [c]ourt notes that there are approximately thirty-four Detroit, Detroit Police Officers who were working without an active law enforcement license and

---

[1] We note that, under MCL 28.609b(10)(a), an MCOLES license is rendered inactive when a person employed as a law enforcement officer is no longer employed as a law enforcement officer. Thus, when Officer Fragoso left his employment with Lincoln Park, his license was immediately inactive and remained so until reactivated consistent with the requirements of MCL 28.609(10)(b). On appeal, the prosecutor acknowledges that Officer Fragoso's license was inactive at the time of defendant's September 30, 2023 arrest.

it has been indicated that the [DPD] violated state law by hiring several officers without activating their law enforcement licenses.[2]

The department did place the officers involved on administrative duty until their licenses have been reinstated. As I understand it, one of the officers that recovered the weapon in this case, Police Officer [Fragoso], as well as the off—He is the same officer who made the observations concerning the allegations that [defendant] had a weapon and he is also responsible for making the observations to determine what we know in the streets that a, Glock switch may have been added to the gun.

The [c]ourt also notes that this same officer has been testifying in matters in District Court as, as late as or as late as two weeks ago in the 36th District Court and even in this building in Courtroom 203. I don't know how this officer is testifying while he's on administrative duty without a license. Evidently, there was some, some issue where the [DPD] failed to request reactivations for these returning officers between the years of 2019 and 2024.

State law requires an individual to have an active law enforcement license. The [c]ourt notes that licenses for active officers are deactivated every time they change jobs and it is up to the new agency, not the officer to reactivate those licenses.

The [c]ourt notes that it's illegal to work in the field as a police officer without having an [MCOLES] [l]icense. That the rules require that these officers have licenses and that they be audited every January.

It's my understanding that the error may have been due to some type of lapse in communication between the [DPD] and law enforcement commissions and the HR Department. It's also my understanding that the prosecutor for Wayne County, Kym Worthy, is examining this issue and is still trying to determine how she is going to move forward. That perhaps she needs some additional information to decide how to proceed, but the [c]ourt notes that in another county, Branch [C]ounty there was a deputy that was found to be working without a license, an active license there, and based upon that a number of civil infractions were dismissed and number of felonies were dismissed.

The [c]ourt has concerns with how the officer can perform specific tasks as an officer if he was not, in fact, an officer at the time, noting that certainly he wouldn't have been able to enforce any motor vehicle laws, wouldn't be able to issue any speeding tickets.

---

[2] Timothy Bourgeois, *MCOLES Press Release: Commission and Detroit Police Department Address Licensing Issues* <https://www.michigan.gov/mcoles/issues-news-info/2024/11/21/mcoles-pr> (accessed January 30, 2026).

The [c]ourt notes that an officer without a license wouldn't even be able to, to execute a search warrant and sign an affidavit because the initial language in the affidavit would indicate that I am a [peace] officer, and based on my training and experience, etc., etc.

The [c]ourt notes that this issue that happened in Branch County seems to be similar to what has happened in Wayne County. That it's problematic. The [c]ourt notes that perhaps this officer not being licensed may not necessarily invalidate all of the cases that he has worked on, but until the prosecutor's office can come to a conclusion about how they are going to proceed with respect to these cases that these officers have been involved in, this [c]ourt believes that the officer had no authority to act as a police officer.

The [c]ourt also notes that this is no different than an attorney who is practicing law without a valid license, and that, that attorney would certainly be subject to misconduct and consequences for practicing law without a license.

So certainly, the consequence in this case is that this case is going to be dismissed without prejudice.

The trial court entered a December 11, 2024 written order memorializing its decision to dismiss the case without prejudice. This appeal of right followed.

## II. STANDARD OF REVIEW

A trial court's decision to dismiss a case is reviewed for an abuse of discretion. *People v Stone*, 269 Mich App 240, 242; 712 NW2d 165 (2005). "An abuse of discretion occurs when the trial court chooses an outcome that is outside the range of principled outcomes." *People v Dickinson*, 321 Mich App 1, 18; 909 NW2d 24 (2017). The prosecution contends the trial court's dismissal violates the constitutional separation of powers doctrine, a question of law that is reviewed de novo. *In re Diehl*, 329 Mich App 671, 698; 944 NW2d 180 (2019). De novo review "means that we review the issues independently, with no required deference to the trial court." *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019). When a "trial court's decision constituted an invasion of the prosecutorial prerogative," i.e. violates the separation of powers doctrine, "the trial court's decision is necessarily an abuse of the trial court's judicial authority." *People v Williams*, 244 Mich App 249, 252; 625 NW2d 132 (2001).

## III. ANALYSIS

The prosecution contends that the trial court violated the constitutional separation of powers doctrine when it dismissed this case due to its main witness, Officer Fragoso, having an inactive MCOLES license when he observed and investigated defendant. We agree.

The constitutional separation of powers doctrine, set forth at Article 3, § 2 of Michigan's 1963 Constitution, provides: "The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution."

"The prosecutor is a constitutional officer whose duties are as provided by law. The conduct of a prosecution on behalf of the people by the prosecutor is an executive act." *Genesee Prosecutor v Genesee Circuit Judge*, 386 Mich 672, 683; 194 NW2d 693 (1972) (*Genesee I*) (citations omitted). "The prosecutor is the chief law enforcement officer of the county. His office is established by the constitution and his duties and powers are established by statute." *People v Williams*, 186 Mich App 606, 609; 465 NW2d 376 (1990). See also Const 1963, art 7, § 4. "The prosecutor, an official of the executive branch, alone makes the decision to bring a criminal charge, a decision not subject to judicial review." *People v Stewart*, 52 Mich App 477, 480; 217 NW2d 894 (1974) (quotation marks omitted).

"A circuit judge may not usurp the authority vested in the prosecutor in determining what charges should be brought against a defendant, except as provided by law." *Williams*, 186 Mich App at 609. "For the judiciary to claim power to control the institution and conduct of prosecutions would be an intrusion on the power of the executive branch of government and a violation of the constitutional separation of powers." *Genesee I*, 386 Mich at 684. See also Const 1963, art 3, § 2. "It also violates our fundamental sense of fair play." *Genesee I*, 386 Mich at 684. Therefore, "the trial court's authority over the discharge of the prosecutor's duties is limited to those activities or decisions by the prosecutor that are unconstitutional, illegal, or ultra vires." *Morrow*, 214 Mich App at 161, citing *Williams*, 186 Mich App at 608-613.

Here, following defendant's bindover from the preliminary examination, the prosecution filed an information in the circuit court pursuant to MCR 6.112 charging defendant with (1) carrying a concealed weapon, MCL 750.227(2); (2) possessing a device designed or intended to be used to convert a semiautomatic firearm into a fully automatic firearm, MCL 750.224e; and (3) felony-firearm, MCL 750.227b(2). The prosecution was authorized, in its discretion, to charge defendant with these offenses. The prosecution was also authorized, in its discretion, to dismiss these charges via *nolle prosequi* with leave of the trial court "after stating on the record the reasons for abandoning or discontinuing the prosecution." MCL 767.29.[3]

In *Stewart*, this Court found "the weight of authority holds that dismissal is in the prosecutor's sole discretion" in the absence of a permissive statute or "where the evidence is insufficient." *Stewart*, 52 Mich App at 482-483 (citations omitted). By way of example, under MCR 6.419(A), "[a]fter the prosecutor has rested the prosecution's case-in-chief or after the close of all the evidence, the court on the defendant's motion must direct a verdict of acquittal on any charged offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction . . . ."[4]

---

[3] See also MCL 767.41, which pertains to cases, other than those involving a major controlled substance, in which a prosecutor determines that an information ought not be filed.

[4] The Michigan Supreme Court has stated that a trial court, "when ruling on a motion for a directed verdict of acquittal must consider the evidence presented by the prosecution up to the time the motion is made, view that evidence in a light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were

In *Morrow*, this Court found that a trial court has no power to "grant a *nolle prosequi* on its own initiative," i.e., sua sponte dismiss a prosecution without the prosecutor's consent, unless it finds the prosecutor, in charging the defendant, or the magistrate, in binding the matter over to the trial court, abused its discretion. *Morrow*, 214 Mich App at 162, citing *People v Nelson*, 66 Mich App 60, 65-66; 238 NW2d 201 (1975). In that case, following the defendant's bindover on charges of first-degree criminal sexual conduct, the complaining witness recanted her testimony under oath and the trial court "sua sponte dismissed the case with prejudice." *Id*. at 159. This Court noted that the victim's decision to recant could not, by itself, prevent the prosecution from reaching a jury because, *inter alia*, the prosecutor at trial "could impeach the victim with her preliminary examination testimony or statements made to hospital staff who treated her to rebut her recanted testimony." *Id*. at 164. The Court found "no reason to conclude that the prosecutor's decision to proceed with the case even after the sole complaining witness recanted her testimony was unconstitutional, illegal, or ultra vires," such that the prosecutor's exercise of such discretion was "exempt from judicial review." *Morrow*, 214 Mich App at 165. It further found under its facts that "the trial court exceeded its authority when it dismissed the information against defendant at the pretrial stage of the proceedings because the decision whether to dismiss a case or proceed to trial is within the prosecutor's sole discretion." *Id.*

Despite citing to *Morrow* on the record, the trial court nonetheless sua sponte dismissed this case without prejudice because Officer Fragoso's MCOLES license was inactive when defendant was arrested, rather than ruling on the prosecution's motion in limine to bar evidence or discussion of Office Fragoso's inactive MCOLES license at trial.

The trial court suggests that *Morrow*'s holding is distinguishable by contending that this case was in the trial stage of proceedings, rather than the pretrial stage. We disagree. The prosecution raised the issue of Officer Fragoso's invalid MCOLES license by way of an oral motion in limine before the jury venire even entered the courtroom or was sworn in. MCR 6.412(B). After hearing the argument of counsel the trial court stated: "The Court is going to take this under consideration and I will make a ruling before we begin the trial." True to its word, the trial court made its ruling on the record before the jury was empaneled and sworn. MCR 6.412(F) provides that "After the jury is selected and before trial begins, the court must have the jurors sworn." "Generally, jeopardy attaches in a jury trial once the jury is empaneled and sworn." *People v Ackah-Essien*, 311 Mich App 13, 32; 874 NW2d 172 (2015). Because MCR 6.412(F) indicates that trial begins when the jury is empaneled and sworn, the holding in *Morrow* was applicable in the present case, in which the jury had not yet been empaneled and sworn.

From its ruling on the record, it appears the trial court determined that the lack of active MCOLES licensure resulted in Officer Fragoso's testimony being inadmissible, which in turn resulted in there being insufficient evidence to support the charges against defendant. However, the trial court failed to establish how Officer Fragoso's inactive MCOLES license precluded him from testifying to his observations.

_____

proven beyond a reasonable doubt." *People v Hampton*, 407 Mich 354, 368; 285 NW2d 284 (1979) (citations omitted).

MRE 601 states the test for witness competency:

> Every person is competent to be a witness unless:
>
> (a) the court finds, after questioning, that the person does not have sufficient physical or mental capacity or sense of obligation to testify truthfully or understandably; or
>
> (b) these rules provide otherwise.

No facts indicate and defendant did not contend that Officer Fragoso did not meet these elements of competency, based on his inactive MCOLES license or otherwise. Additionally, no other rule of evidence precludes Officer Fragoso's testimony. Given that Officer Fragoso was competent to testify at trial, he could testify to any relevant, admissible information. MRE 401 and 402. Presumably, Officer Fragoso would have testified to recovering a handgun with a conversion device after observing defendant. His testimony would clearly provide support to convict defendant.

MCL 28.609(14) provides that "[a]n individual licensed under this section shall not exercise the law enforcement authority described in the laws of this state under which the individual is employed if . . . (c) [t]he individual's license is rendered inactive." But this is not the sort of "permissive statute" discussed in *Stewart* as it does not provide for the trial court's sua sponte dismissal as a remedy.[5] See *People v Monday*, 70 Mich App 518, 522; 245 NW2d 811 (1976) (holding that statutes granting a trial court authority to dismiss a case without the prosecution's consent specifically spell out such authority in the statute). Also, from the record before us, it is not clear to what extent the prosecutor intended to solicit testimony from Officer Fragoso that included his exercise of law enforcement authority. Again, Officer Fragoso did not arrest defendant, and the record suggests that he was not even the officer who initially detained defendant (he testified at the preliminary examination to witnessing his colleagues take defendant into custody as defendant quickly walked or jogged away from the red sedan). Officer Fragoso allegedly witnessed various circumstances related to defendant's possession of the firearm at issue in this matter, which would not necessarily be indicative of the exercise of law enforcement authority. That being said, Officer Fragoso did recover the weapon, placed a tracker number on it, and had it sent to the police department for further processing, which might constitute the exercise of law enforcement authority. But the trial court dismissed the case without prejudice before determining the extent to which Officer Fragoso could testify, i.e., the court performed no

---

[5] This statute could conceivably provide a basis for a motion to suppress evidence, hold an arrest invalid, quash an affidavit signed in a person's capacity as a police officer, or some other relief. But here, Officer Fragosso did not arrest defendant and much of his relevant evidence was not based on his exercise of law enforcement authority, but rather on mere observation. Likewise, while Officer Fragoso's inactive license could become an issue of witness credibility, it is well established that witness credibility is an issue for the jury, not the trial court. *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998).

analysis indicating whether Officer Fragoso could testify to all of the facts covered in his preliminary examination, some of the facts, or none at all.

Based upon the precedent already discussed, the trial court's dismissal violated the constitutional separation of powers doctrine and was an abuse of discretion because: (1) no permissive statute is cited; (2) there was no determination by the trial court that the evidence was insufficient for a conviction; and (3) there was no determination by the court that any "activities or decisions by the prosecutor that [were] unconstitutional, illegal, or ultra vires." *Stewart*, 52 Mich App at 482-483; *Morrow*, 214 Mich App at 161-162.

We find that the trial court's pretrial sua sponte dismissal of this case without prejudice, without the prosecutor's consent, violates the constitutional separation of powers and was an abuse of discretion. We reverse the trial court's order dismissing this matter without prejudice and remand to allow the prosecution to reinstate the charges against defendant at its discretion. We do not retain jurisdiction.

/s/ Randy J. Wallace
/s/ Matthew S. Ackerman